## SARAH vs. THE STATE.

It is no *justification* in the prosecution of a criminal offence committed by a slave, that it was done by the command of the master: but such command may be given in evidence in mitigation of the punishment of the slave for a crime less than felony.

*Appeal from the Circuit Court of Lafayette county.*

The Hon. THOMAS HUBBARD, Circuit Judge.

CUMMINS & GARLAND for the appellant.

Beyond any doubt, whatever, if the master commanded, or

ordered the servant to commit the crime, he, and not the servant, is liable for the injury; and the testimony offered to be introduced, in exculpation of the servant, by showing it to have been done at the command, order, or direction of the master, was certainly competent and material. *Reeve's Domestic Relations*, *p.* 356, we have the law that: "If a master expressly authorizes his servant to make a contract, the law considers this contract as the master's; for, what a man does by another, he does himself; and when the master commands his servant to do an injury, and he does it, the master is liable." And, whatever is done within the scope of the general authority given, is certainly done by the master. *Ibid.* 357. There can be no question, that when the servant acts in the employ of the master civilly, or otherwise, the master is liable; and, in addition to the above authorities, we cite 17 *Mass. Rep.* 508. In Louisiana, the courts have gone so far as to decide that the master was responsible if the damage had been caused by the slave, acting either by, or without, the master's order. 9 *Louisiana Rep.* 339; *Wheeler's Law of Slavery* 231 and 232. The institution of slavery itself, necessarily implies that, in all acts of the servant, done under direction or order of the master, the master is liable.

JORDAN for the State.

Mr. Chief Justice ENGLISH delivered the opinion of the Court. Sarah, a slave, the property of *Madison Sims*, was indicted in the Lafayette Circuit Court for an assault and battery upon *Mortica Brown*. The facts of the case are substantially the same as in the case of *Bone, a slave, vs. the State*, just decided; and for the same error, the judgment of the Court below must be reversed, and the cause remanded with instructions to arrest the judgment, etc.

But there is an additional question in this case, which it may be well to decide. During the trial, after the State had proven by *Caroline Brown*, that the slave *Sarah* had committed an assault and battery upon *Mortica*, the son of *Mrs. Brown*, the

master of the slave was introduced as a witness on the part of the defence, and the counsel of *Sarah*, during the examination, proposed to ask him a question, which, we suppose, was intended to draw from him the statement that his slave committed the assault and battery by his direction: but the Court ruled out the question as incompetent, etc.

It is insisted by the counsel for the appellant that if the slave committed the offence by command of her master, the master would be responsible for the act, and not the slave.

The offence being a misdemeanor, if the slave acted in obedience to the command of the master, he would be liable as a principal in the crime. *Hubbard vs. State,* 5 *Eng. R.* 378. *McConnell vs. Hardeman,* 15 *Ark.,* 157. *Wharton's Cr. Law,* 67. *Chitty's Cr. Law,* 261. But would the slave be justifiable, by reason of peculiar relationship to the master?

Mr. REEVES, in his work on the DOMESTIC RELATIONS, treating of the relation of *master* and *servant* ( *p.* 356) says: " When the master commands his servant to do an injury, and he does it, the master is liable: for he who commands, advises or abets a trespass, is himself a trespasser: and the servant is liable as well as the master. Although there are some cases which favor the idea that a servant is not liable for a wrong act, when done by order of the master, these cases, I apprehend, are not law. The idea that a command, by a superior, is to be admitted as a justification for an injury, is admissible only in case of a wife, who does an injury by the command, and in the company of her husband. A servant is bound to perform the lawful commands of his master, but not those which are unlawful. Such a principle would justify a servant in committing any crime. Even if the servant be ignorant that he is committing any injury: yet, if the thing done is an injury, he is liable, though done by the command of the master."

Mr. BLACKSTONE says: " If the servant commit a trespass by the command or encouragement of his master, the master shall be guilty of it, though the servant is not thereby excused, for he is only to obey his master, in matters that are honest and lawful." *Vol.* 1, *p.* 430.

This is the rule of the common law, applicable to the relation of master and servant, as it existed in England.   The common law is in force here, so far as it is consistent with our institutions, etc.   (*Dig. ch.* 34.)   The relation of master and servant, as it existed in England, differs widely, in many respects, from that of master and slave in this State. (*Mc Connell vs. Hardeman,* 15 *Ark.* 152:) but in some respects the relations are similar, and in determining questions growing out of the relation of master and slave, we must necessarily adopt, by analogy, to some extent, principles of the common law applicable to the relation of master and servant.

By the common law, as we have seen, if the servant commit a trespass by command of the master, they are both liable criminally.   So they are both responsible to the injured party by a civil action.

Here, too, the master is liable to the public by indictment and to the injured party by action.   But the slave is not subject to a civil action.

The slave, however, is a human being—he is regarded as a rational creature—a moral agent.   He, as well as the master, is the subject of government, and amenable to the laws of God and man.   *Ewing vs. Thompson,* 13 *Mo. R.* 137.   *Wright vs. Weatherly,* 7 *Yerg.* 367.   In all things lawful, the slave is absolutely bound to obey his master.   But a higher power than his master—*the law of the land*—forbids him to commit crime.   The mandate of the law extends to every rational subject of the government.   None are high enough to claim exemption from its penal sanctions, and none too low to be reached by them. Where the mandate of the law, and the command of the master come in conflict, the obligation of the slave to obey the law is superior to his duty of obedience to his master.

We must hold, therefore, that the slave cannot justify the commission of a crime, and exempt himself from amenability to the law by proving that he acted under the direction of his master.

But where the slave commits a crime by the direction of the master, owing to the peculiar relation existing between them,

he ought not, in justice, to be punished so severely, as where the crime is voluntary on his part. If, therefore, in this case, the master so far abused his authority over the slave as to direct her to commit an assault and battery upon a white child, this should have gone to the jury in mitigation of the punishment of the slave.

Absent, Hon. T. B. HANLY.